# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Operating Engineers Local No. 49       Civil No. 09-65 (DWF/RLE)
Health and Welfare Fund, Central
Pension Fund of the International Union
of Operating Engineers and Participating
Employers, and Local No. 49 International
Union of Operating Engineers and Associated
General Contractors of Minnesota Apprenticeship
and Training Program and their Trustees,

         Plaintiffs,

v.                                                       **MEMORANDUM**
                                                         **OPINION AND ORDER**

Ronglien Excavating, Inc.,

         Defendant and Third-Party Plaintiff,

v.

International Union of Operating Engineers,
Local No. 49,

         Third-Party Defendant.

_____

Amy L. Court, Esq., and Carl S. Wosmek, Esq., McGrann Shea Carnival Straughn & Lamb, Chtd, counsel for Plaintiffs.

Joseph J. Mihalek, Esq., Fryberger Buchanan Smith & Frederick, PA, counsel for Defendant and Third-Party Plaintiff.

Angela M. Rouillard, Esq., and Paul W. Iversen, Esq., Williams & Iversen, counsel for Third-Party Defendant.

_____

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss or Strike Third Party Complaint brought by Third-Party Defendant International Union of Operating Engineers, Local No. 49 (the "Union") and a Motion to Compel Arbitration and Stay Litigation brought by Defendant and Third-Party Plaintiff, Ronglien Excavating, Inc. ("Ronglien"). For the reasons stated below, the Court grants the Union's motion to dismiss and denies Ronglien's motion to compel arbitration and stay litigation.

## BACKGROUND

Plaintiffs are multi-employer, jointly-trusteed fringe benefit plans created and maintained pursuant to the Employer Retirement Income Security Act ("ERISA"). (Compl. ¶ 1.) Ronglien is a South Dakota corporation engaged in the business of excavating and construction. (Third-Party Compl. ¶ 1.) The Union is a labor organization under the National Labor Relations Act ("NLRA"). (*Id*. ¶ 2.) In this action, Plaintiffs allege that they are entitled to collect unpaid fringe benefit contribution payments from Ronglien under a collective bargaining agreement entitled Agreement between Associated General Contractors of Minnesota Highway, Railroad and Heavy Construction Division and International Union of Operating Engineers Local 49 (the "CBA"). (Aff. of Joseph H. Mihalek ("Mihalek Aff.") ¶ 2, Ex. 1.) The CBA provides in relevant part:

ARTICLE 22 – FRINGE BENEFITS

(6) Each Employer who is required to make payments to the Trust Funds shall promptly furnish to the Trustees and the Unions, or their authorized agents, on demand, all necessary employment and payroll records relating

to its Employees covered by this Agreement, including any other relevant information that may be required in connection with the administration of the Trust Funds. . . . If any Employer fails or refuses to furnish its payroll records to the Trustees and the Unions . . . the Trustees and the Unions may enforce such rights by legal action, in which event all attorney fees, service fees, filing fees, court reporter fees and other legal costs and disbursements, as well as the auditing fees and costs incurred in conducting such audit, shall be paid by such Employer on direction of the Trustees.

. . .

(8) The parties of this Agreement acknowledge that the provisions of this Agreement establishing rates of pay, wages, all hours of employment and other terms and conditions of employment, *including fringe benefits, apply to Employees employed in job classifications within the jurisdiction of the Unions, regardless of whether or not such Employees are members of the Union*.

(Mihalek Aff. ¶ 2, Ex. 1 at 16-17) (emphasis added.) The CBA also contains the following provisions regarding dispute resolution:

ARTICLE 11 – SETTLEMENT OF DISPUTES

11.01 Any controversy over the interpretation of or adherence to the terms of this Agreement shall first be attempted to be resolved between the Union and the Employer. . . .

11.02 If a satisfactory settlement cannot be reached within five (5) working days the matter may be brought to the AGC-Basic Trades Dispute Board, if both parties agree in writing.

. . .

11.07 Should the Disputes Board . . . be unable to reach a decision . . . or if either party refuses to use the Joint Disputes Board then the matter may be referred to a Board of Arbitration . . . .

ARTICLE 22- FRINGE BENEFITS

(7) Notwithdstanding the provisions of Article 11 Settlement of Disputes,

3

> the failure, refusal or neglect of an Employer to report and to pay sums due the Trust Funds or otherwise comply with the terms and provisions of this Article shall not be subject to arbitration.

(Mihalek Aff. ¶ 2, Ex. 1 at 9-10, 17.)

Plaintiffs allege that under the CBA, they were entitled to request that Ronglien produce all relevant payroll and employment records for audit, that they did request such production, and that Ronglien refused to provide Plaintiffs with full access to payroll and business records. (Compl. ¶¶ 9-11.) Plaintiffs brought this action seeking an order requiring Ronglien to provide the requested records and to pay any unpaid fringe benefit contributions. Ronglien denies that it failed to remit contributions for covered individuals, asserting that it had an agreement with the Union that only required Ronglien to provide fringe benefit contributions for employees who voluntarily joined the Union. (Third-Party Compl. ¶ 7.) Ronglien asserts that the Union agreed that Ronglien would not be liable to provide records and fringe benefit contributions for employees that have not voluntarily joined the Union. In addition, Ronglien asserts that it and the Union have interpreted and applied the CBA so that it was only applicable to employees who voluntarily joined the Union. (Third-Party Compl. ¶¶ 7-9.) Ronglien also asserts that the Union was aware that Ronglien had employees who were not members of the Union and that the Union never objected to their employment or to Ronglien making fringe benefit contributions only for employees who voluntarily joined the Union. (*Id*. ¶¶ 12-13.) Ronglien claims that it brought its Third-Party Complaint to protect its right to indemnification and contribution.

The Union brings a motion to dismiss or, in the alternative, to strike Ronglien's Third-Party Complaint under Rules 12(b)(1), 12(b)(6) and 14(4). Ronglien moves to stay litigation of this action and to compel arbitration between Ronglien and the Union under the CBA.

## DISCUSSION

**I.      Motion to Dismiss**

    **A.      Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle by which to seek dismissal of a claim for lack of federal subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the non-moving party receives the same protections as it would defending against a motion brought pursuant to Rule 12(b)(6). *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City*

*of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964–65.  As the United States Supreme Court recently reiterated, "[t]he threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### B. Ronglien's Third-Party Claims

In its Third-Party Complaint, Ronglien asserts five claims against the Union: (1) stay of litigation and order for arbitration; (2) breach of contract and course of dealing; (3) fraudulent and negligent representations; (4) promissory and equitable estoppel; and (5) reformation.

### 1. Preemption

The Union argues that Ronglien's claims are preempted under section 514 of ERISA and section 301 of the Labor Management Relations Act ("LMRA"). The doctrine of "complete preemption" has been applied in cases arising under ERISA and section 301 of the LMRA. *Chapman v. Lab One,* 390 F.3d 620, 629 (8th Cir. 2004). The Court will address each section in turn.

Section 515 of ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of . . . a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of . . . such agreement.

29 U.S.C. § 1145. The Eighth Circuit has noted that this section was aimed at simplifying actions to collect delinquent contributions, avoiding costly litigation, and enhancing the administration of multi-employer pension plans. *Cent. States, Se. & Sw. Areas Pension Fund, et al. v. Indep. Fruit and Produce Co.*, 919 F.2d 1343, 1349 (8th Cir. 1990). Section 515, for example, eliminates certain contract defenses, such as fraud in the inducement and oral side agreements. *Id*.

Further, section 514 of ERISA provides that ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). "[T]he language of ERISA's preemption clause sweeps broadly, embracing common law causes of action if they have a connection with or a reference to an ERISA plan." *Shea v. Esensten,* 107 F.3d 625, 627 (8th Cir. 1997). In determining whether a state action "relates to" an employee benefit plan covered by ERISA, the court employs a

7

two-part test. *See Parkman v. Prudential Ins. Co. of Am.,* 439 F.3d 767, 771 (8th Cir. 2006). A law relates to a covered employee benefit plan if it has (1) 'a connection with' or (2) 'reference to such a plan.'" *Id.* To determine whether a state law has a sufficient "connection with" an employee benefit plan, the Court looks both to the objectives of ERISA as well as the nature of the effect of the state-law claims on ERISA plans. *Shea v. Esensten*, 208 F.3d 712, 718 (8th Cir. 2000). Specifically, the Court considers whether the state law negates an ERISA plan provision, affects relations between primary ERISA entities, has an impact on the structure of ERISA plans, has an impact on the administration of ERISA plans, has an economic impact on ERISA plans, is consistent with other ERISA provisions, and is an exercise of traditional state power. *Id.*

Article 22 of the CBA explicitly requires Ronglien to furnish certain employment and payroll records and fringe benefit contributions relating to "all employees in job classifications within the jurisdiction of the Unions, regardless of whether or not such Employees are members of the Union." (Mihalek Aff. ¶ 2, Ex. 1 at Art. 22(6), (8).) If Ronglien were to succeed on its state-law claims, it would negate the portion of the CBA that requires Ronglien to furnish records and pay contributions for non-Union employees, effectively rewriting Article 22(8) of the CBA. This revision would eliminate an entire class of Ronglien's covered employees under the CBA and therefore would eliminate that same class of employees from fringe benefit plans. This revision would also impact Ronglien's relationship with the Union, as well as the structure and administration of fringe benefit plans under the CBA. It would also have an economic impact on the ERISA plan, as Ronglien would effectively avoid an obligation to pay

8

contributions for non-Union employees. Because Ronglien's claims would impact a term of the CBA, and, therefore, would impact the fringe benefit plans, the Court concludes that Ronglein's claims are preempted by ERISA.[1]

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the

---

[1] The Union also asserts that Ronglien's claims are not allowed because Federal Courts allow for only two defenses to a section 515 collection action—that the contribution fund is illegal or that the contract is void. *See Cent. States,* 919 F.2d at 1349. The Union asserts that Ronglien has pleaded only fraud in the inducement, which is not a recognized defense. *See, e.g.*, *Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 779 (7th Cir. 2002). Ronglien, however, asserts that its claims are broad enough to include fraud in the execution, which is a viable defense. The Court need not reach this issue because the Court determines that Ronglien's Third-Party claims are preempted. The Court notes, however, that Ronglien's fraudulent representation claim, as it is presently pleaded in its Third-Party Complaint, centers on the allegation that the Union made certain representations to induce it to enter into the CBA by stating that Ronglien would only have to make benefit contributions for employees who voluntarily joined the union. These allegations appear to be limited to a fraud in the inducement claim.

Ronglien also claims that it signed a one-page document entitled "Acceptance of Agreement," and that it was not provided with a copy of the CBA. This allegation, however, is not contained in the Third-Party Complaint and therefore is not a fact the Court can consider in analyzing the present motion to dismiss. Even if the factual averment was properly before the Court, it would not be enough to support the claim for fraud in the execution. The "Acceptance of Agreement" also states that "[Ronglien] hereby agrees to abide by the terms and conditions of the [CBA]." (Mihalek Aff. ¶ 3, Ex. 2.) The reference to the CBA in the one-page document would preclude a finding of reasonable reliance on the part of Ronglien and belies any assertion that Ronglien did not know it was signing a CBA. *See, e.g.*, *id*. (finding, as a matter of law, that there was no fraud in the execution where employer failed to show reasonable reliance on the union's representations; explaining that employer's ignorance of the nature of a contract was not excusable where he did not take the opportunity to review the document).

9

parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 preempts state-law claims that are founded on rights created by a collective bargaining agreement or "where the resolution of the state law claim 'substantially depends' on the interpretation of terms or provisions of a collective bargaining agreement." *Hanks v. General Motors Corp.,* 906 F.2d 341, 343 (8th Cir. 1990) (citing *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S. Ct. 1904, 85 L.Ed.2d 206 (1985)). A state-law claim is preempted if it is "inextricably intertwined with consideration of the terms of the labor contract." *Id.* If a state-law claim is not "inextricably intertwined" with a collective bargaining agreement, it is independent and is not preempted. *Id.*

In all of its state-law claims, Ronglien asserts that the Union made representations that Ronglien would only be responsible for fringe benefit contributions for employees who voluntarily join the union. These alleged representations directly conflict with the language of the CBA, which provides in part that covered employees include "all employees in job classifications within the jurisdiction of the Unions, regardless of whether or not such Employees are members of the Union." (Mihalek Aff. ¶ 2, Ex. 1 at 16-17.) In order to determine whether Ronglien should prevail on its state-law claims, it would be necessary to interpret the CBA.

For example, to prevail on its breach of contract claim, Ronglien must first show the formation of a contract. *Parkhill v. Minn. Mutual Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000) (applying Minnesota law). In its Third-Party Complaint, Ronglien

10

asserts the Union "breached the terms of the collective bargaining agreement and the long-established course of dealing . . . by permitting the trustees of its fringe benefit funds to attempt to audit non-covered employees." (Third-Party Compl. ¶ 22.) To establish a breach of the CBA, it goes without saying that it would be necessary to interpret the terms of the CBA. To the extent that Ronglien argues that a previous course of dealing contradicts the language of the CBA, a fact-finder would still have to consider the language of the CBA because in such a situation, express contractual language is weighed against (and given greater weight than) the parties' prior course of dealing. *Anoka-Hennepin Ed. Ass'n v. Anoka-Hennepin Indep. Sch. Dist. No. 1*, 305 N.W.2d 326, 330 (Minn. 1981).

To prevail on its claims for fraudulent and negligent representation and estoppel, Ronglien must demonstrate that it justifiably relied on the Union's alleged assurances about the scope of its obligations to make fringe benefit contributions. *See, e.g.*, *Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006) (explaining that under Minnesota law, claims for fraudulent and negligent misrepresentation require proof of justifiable reliance); *City of Genesco v. Utilities Plus*, 533 F.3d 608, 616-17 (8th Cir. 2008) (considering reasonableness of reliance in estoppel and fraud claims). To determine whether Ronglien's reliance on the alleged misrepresentations by the Union was justifiable, a fact-finder would consider the specific information and experience Ronglien had when it signed the CBA. *See Superior Waterproofing*, 450 F.3d at 331. Part of that consideration would require an interpretation of the relevant provisions of the CBA, including whether the language in

the CBA was sufficiently ambiguous to be susceptible to a different interpretation. *See id*. at 331 (noting that reliance on a statement that conflicts with the provisions of a written agreement is reliable only if the written agreement is sufficiently ambiguous so that a layperson could reasonably believe it supported the alleged misrepresentation). In addition, the CBA necessarily applies to Ronglien's claim for reformation. Under Minnesota law, courts may reform a contract if (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct. *Leamington Co. v. Nonprofits' Ins. Ass'n*, 615 N.W.2d 349, 354 (Minn. 2000). To evaluate whether the CBA expresses the real intentions of the parties requires an interpretation of the relevant provisions of the CBA.

Because a fact-finder would have to consider and interpret the CBA to determine whether Ronglien should prevail on any of its state-law claims, the Court concludes that the state-law claims are "inextricably intertwined" with the terms of the CBA. Thus, the state-law claims are preempted and Counts Two, Three, Four, and Five are dismissed.

## II. Motion to Compel Arbitration and Stay Litigation

Ronglien asserts a claim for and moves to compel arbitration and stay litigation. This claim and motion are moot in light of the Court's determination above that Ronglien's claims are preempted. Even if the claims were not preempted, the Court would deny Ronglien's motion and dismiss its first cause of action.

Ronglien asserts that this matter is properly arbitrable under Article 11 of the CBA, which contains a general dispute resolution provision. However, Article 22 of the CBA addresses claims regarding unpaid fringe benefit contributions. In particular, Article 22 provides in part:

> *Notwithstanding the provisions of Article 11 Settlement of Disputes*, the failure, refusal or neglect of an Employer to report and to pay sums due the Trust Funds or otherwise to comply with the terms and provisions of this Article shall *not* be subject to arbitration.

(Mihalek Aff. ¶ 2, Ex. 1.) Plaintiffs' action against Ronglien is a benefit contribution dispute. As such, it is not arbitrable under Article 22 of the CBA. Ronglien does not contend that the Complaint in this case is arbitrable; but instead asserts that the claims in its Third-Party Complaint are arbitrable. The Court sees no merit to Ronglien's contention that its Third-Party Complaint, which is based on Plaintiff's initial Complaint, is properly arbitrable. In its Third-Party Complaint, Ronglien asserts that it was not required to make contributions to fringe benefit funds on behalf of employees who did not voluntarily join the union. These claims, therefore, involve the failure, refusal, or neglect of Ronglien to report and pay sums due or to otherwise comply with the terms of Article 22, which requires Ronglein to "make payments to the Trust Funds" and to furnish all necessary records relating to its Employees, and further that the provisions of the Agreement apply to Employees, "regardless of whether or not such Employees are members of the Union." Moreover, Article 22(7) specifically excludes Ronglein's claims from the requirements of the general arbitration provision of Article 11. Accordingly,

Ronglien's motion to compel arbitration and stay litigation is denied and Count One of Ronglien's Third-Party Complaint is dismissed.

### III. Attorney Fees

The Union asserts that it is entitled to an award of attorney fees for the necessity of bringing a motion to dismiss and responding to Ronglien's motion to compel arbitration and stay litigation. The Union asserts that Ronglien's motion to compel arbitration and stay litigation was baseless and that Ronglien's assertions have no good faith basis in either fact or law and that Ronglien, through its counsel, has acted in bad faith. The Union bases this request on the federal court's inherent power to assess attorney fees against counsel. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). A court may award attorney fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975). The Court determines that the facts of this case do not support an award of attorney fees and declines the Union's request for such an award.

## CONCLUSION

1. Ronglien's Motion to Compel Arbitration and Stay Litigation (Doc. No. 24) is **DENIED.**

2. The Union's Motion to Dismiss (Doc. No. 15) is **GRANTED**.

3. Ronglien's Third-Party Complaint is **DISMISSED WITH PREJUDICE**.

4. The Union's request for attorney fees is **DENIED**.

Dated: August 14, 2009          s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge